UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FAIRMONT SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 2:10 CV 070 ) |
| 1039012 ONTARIO, INC, d/b/a HUMMER TRANSPORTATION, LTD., KIMBERLY SPOA-HARTY, AND JESSE HARTY, | ) ) ) ) |
| Defendants. | ) ) |
| _____/ | |
| KIMBERLY SPOA-HARTY AND JESSE HARTY, | ) ) ) |
| Counter-claimants | ) ) |
| v. | ) ) |
| FAIRMONT SPECIALTY INSURACNE COMPANY | ) ) ) |
| Counter-Defendant | ) ) |

## OPINION AND ORDER

After being involved in an accident with a tractor-trailer, Defendants Kimberly Spoa-Hoarty and Jesse Harty ("the Hartys") filed suit in state court against 1039012 Ontario Inc, d/b/a Hummer Transportation, Ltd ("Ontario"), the lessee of the tractor-trailer involved in the accident and Hummer Transportation, Inc. ("Hummer"), the lessor of the tractor-trailer.[1]  A state court jury

---

[1] It has been asserted in the Complaint that Hummer is no longer doing business.

1

awarded the Hartys in excess of five million dollars.[2] Thereafter, the Hartys sought payment of Ontario's liability under the judgment from Plaintiff, Fairmont Specialty Insurance Co. ("Fairmont"), based upon an MCS-90 endorsement policy issued to Ontario. Fairmont, in turn, filed the present declaratory judgment action wherein it named Ontario, and the Hartys as defendants. Fairmont seeks a declaration that it owes no coverage for the accident by virtue of its MCS-90 endorsement. The Hartys' counterclaimed against Fairmont asserting that it has breached the terms of the MCS-90 endorsement.

Presently before the Court are: (1) Fairmont's Motion for Summary Judgment [DE 42]; (2) The Hartys' Motion for Summary Judgment on the Complaint and Counter-claim [DE 44]; and (3) Fairmont's motion for a default judgment against Ontario, who has not appeared or responded to this suit. [DE 19][3].

For the following reasons, Fairmont's Motion for Summary Judgment will be DENIED; the Hartys' Motion for Summary Judgment on the Complaint and Counter-Claim will be GRANTED in part and DENIED in part; and the Motion for Default Judgment will be DENIED as MOOT.

## APPLICABLE STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d

---

[2]Kimberly Spoa-Harty was awarded $4,270,000. Her husband, Jesse, was awarded $950,000.

[3]The undersigned took under advisement pending the resolution of the declaratory judgment proceeding.

202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## FACTUAL BACKGROUND[4]

On February 17, 2006, Inderjeet Sekhon ("Sekhon") was operating a tractor-trailer westbound on I–94 in Portage, Indiana, when his truck collided with Mrs. Harty's Chrysler Sebring, in which she was also traveling westbound. Sekhon was employed by Ontario at the time of the accident. He was driving the tractor and trailer leased to Hummer by Ontario ("the Freightliner").

The Hartys filed a Complaint in the Porter Superior Court against Hummer and Ontario for the personal injuries Mrs. Harty sustained as a result of the collision. The Hartys alleged that Hummer and Ontario were each separately liable for the negligent maintenance, operation and use of the Freightliner and that each was vicariously liable for the driver's negligence. On January 22, 2008, the Hartys obtained a default judgment as to liability against both Ontario and Hummer as a discovery sanction.[5] The case proceeded to trial on damages and a jury awarded the Hartys just over

---

[4] Reciting the facts of this case has been made exceedingly difficult by the parties' inability to agree on some basic facts of this case, see footnote 2 below for an example.

[5] On November 5, 2007, the Hartys filed a motion in the trial court to default Hummer and Ontario on the issue of liability as a sanction for alleged non-compliance with discovery. Hummer and Ontario responded to the motion thirty days after the date the response was due. Nonetheless, a hearing was held, the trial court took the matter under advisement, and ultimately granted the motion to default Hummer and Ontario on the issue of liability as a sanction for their non-compliance with discovery.

5 million dollars. Final judgment was entered against Ontario and Hummer.[6]

At the time of the Accident, Hummer was insured by National Continental Insurance Company ("National") with limits of $750,000.[7] The National Policy contained an MCS-90 endorsement.[8] On behalf of Hummer, National has paid to the Hartys the policy limits under its insurance agreement along with interest on the judgment. (See DE 51). As a result, it has satisfied its responsibility under the insuring agreement and is not a party in the instant action.

For the period of June 27, 2005 to June 27, 2006, Markel Insurance Company of Canada ("Markel") provided certain insurance coverage to Ontario. The Markel policy did not have the Freightliner listed as a covered vehicle. Markel has denied coverage because the Freightliner is not a listed vehicle under its policy and the policy excludes coverage for leased vehicles. Fairmont, by collateral agreement, endorsed the Markel Policy by issuing a Form MCS-90 endorsement effective

---

Hummer and Ontario moved to have the default judgments set aside. After a hearing on the matter, the trial court denied the motion

[6] The Indiana Court of Appeals affirmed both the discovery sanction and the damages, *Hummer Transp., Inc. V. Spoa-Harty*, 939 N.E.2d 131 (table) (Ind.App. 2010) (trans. denied May 19, 2011).

[7] According to Fairmont, the Freightliner was an insured vehicle on the National Policy. According to the Hartys, the Freightliner was not initially covered under the National policy but was added on January 9, 2006. For reasons that go unexplained in the record, the Hartys assert that the Freightliner was then removed from the National policy on February 15, 2006 (two days before the accident). To make matters more confusing, Fairmont then goes on to note that National has acknowledged that it DID insure the Freightliner at the time of the accident. (Reply, p. 1). The Hartys, however, state that National has NOT acknowledged that it insured the Freightliner but has "only admitted that it insured Hummer and was obligated to pay its limits of $750,000 on behalf of Hummer only." (Response, p. 7).

[8] An MCS-90 endorsement must be attached to the auto liability policy of certain regulated motor carriers to assure that federally mandated insurance coverage under the Motor Carrier Act, 49 U.S.C. §10927, et seq., is in place. The legislative purpose of such an insurance requirement is to ensure that permitted motor carriers have independent financial means to pay for injuries to the general public arising out of trucking operations. *Travelers Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986).

June 27, 2005, with limits of $1,000,000. That MCS-90 endorsement reads, in relevant part:

> In consideration of the premium stated in the policy to which this endorsement is attached, [Fairmont] agrees to pay within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance, or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy or whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere...It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

(Fairmont MCS-90; DE 45, Exhibit 10).[9] The language in the MCS-90 endorsement further provides judgment creditors with a remedy in the event that Fairmont fails to pay a judgment against its insured:

> It is further understood and agreed that, upon the failure of the company to pay any final judgment against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

*Id.*

After the Hartys sought payment from Fairmont under its endorsement, Fairmont brought this declaratory judgment action seeking a declaration that it is not responsible for payment to the Hartys under the MCS-90 endorsement, in part, because National has already paid the Hartys under its policy. The Hartys counter-sued to compel payment under the MCS-90 language above, arguing

---

[9]Fairmont's MCS-90, like all MCS-90 endorsements, is a form endorsement to be included in an authorized carrier's insurance policy.49 C.F.R. §387.15 (1995).

5

that Fairmont is liable under the MCS-90 regardless of National's liability.  It is to these issues that the court now turns.

## DISCUSSION

### I.      MCS-90 Endorsement Liability

Federal law requires common carriers, such as trucking companies, to obtain insurance to cover motor vehicle accidents. *Carolina Casualty Ins. Co. v. Yeates,* 533 F.3d 1202, 1204 (10th Cir.2008). Related federal regulations require all interstate carriers to maintain insurance or another form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles" under the carrier's permit. 49 C.F.R. §§ 387.301(a), 387.7; see also *Travelers Ins. Co. v. Transport Ins. Co.,* 787 F.2d 1133, 1140 (7th Cir.1986) (noting that ICC regulations are intended "to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations"). To satisfy this insurance requirement, the regulations require the attachment of an MCS-90 endorsement to each insurance policy of the carrier, which guarantees payment in the amount of at least $750,000 per accident. 49 C.F.R. §§ 387.7, 387.9.  The endorsement creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage. *See Auto-Owners Ins. Co. v. Munroe,* 614 F.3d 322, 327 (7th Cir. 2010); *Carolina Casualty Ins. v. Yeates,* 584 F.3d 868, 881 (10th Cir.2009); *Minter v. Great Am. Ins. Co. of N.Y.,* 423 F.3d 460, 470 (5th Cir.2005).   Thus, "the payment obligation [under an MCS 90 endorsement] is broader than the policy itself and applies regardless of '"whether or not each motor vehicle is specifically described in the policy,' and despite

any "condition, provision, stipulation, or limitation contained in the policy.'" *Auto-Owners*, 614 F.3d at 327; Fairmont MCS-90.  As explained in *Auto-Owners*:

> [A]n insurer is required to pay even if, for example, the insured operates a leased vehicle not shown in the declarations or the accident is caused by a type of event excluded by the policy. In other words, the MCS-90 does not modify the terms of the policy, but instead obliges the insurer to pay up to $750,000 of a final judgment regardless of the terms of the policy.

*Id.*[10]

The sole question presented in this case is whether the Hartys, by virtue of National's payment of its policy limits, have received all that they are due under the insuring agreements of the various carriers or whether Fairmont's MCS-90 endorsement has additionally been triggered requiring payment to the Hartys.  As would be anticipated, Fairmont's position is that because National has paid its policy limits of $750,000, the public liability that is guaranteed by the MCS 90 endorsement has been satisfied for this accident and thus, it is not obligated under its endorsement to pay the Hartys for its portion of the liability.  In essence, its position is that the public liability to be satisfied is per accident, not per carrier.  The Hartys assert, however, liability is generated per carrier, not per accident and thus, each insurer must independently meet its public liability just as each carrier is required to independently obtain MCS 90 endorsements.

In support of its position, Fairmont relies almost exclusively on the Tenth Circuit's holding

---

[10]In their brief, the Hartys assert that Fairmont challenges whether the MCS 90 covers the accident at issue because Markel did not list the vehicle in its own insurance policy.  The court has not uncovered this argument in the briefs and, even if it did, the endorsement's language as well as the *Auto-Owners* case cited in the main text plainly forecloses such an argument.  The MCS-90 endorsement covers the insured carrier regardless of the terms of the underlying insurance policy so as to ensure that at least a minimum amount of public liability can be met in the event a motor carrier becomes liable for a civil judgment AND an underlying insurance policy does not meet the minimum financial standards on its own.

7

in *Carolina Casualty Insurance Company v. Yeates*, 584 F.3d 868 (10th Cir. 2009). In *Yeates,* the defendant was injured in an accident involving a truck driver whose employer was insured under two separate policies, one issued by State Farm and one by the plaintiff. The State Farm policy expressly covered the truck in question, but the Carolina policy did not, although the Carolina policy was accompanied by an MCS-90 endorsement that required Carolina to pay "any final judgment recovered against [the carrier] for public liability resulting from ... use of motor vehicles." In reversing the trial court's decision, the Tenth Circuit abandoned its prior precedent and joined the majority view that an MCS-90 endorsement extends otherwise non-existent coverage only when the carrier's other insurance coverage is insufficient to satisfy the claim (*i.e*. it operates as excess insurance as to risks not expressly covered by the policy). *Yeates*, 584 F.3d at 871. In doing so, the Tenth Circuit crafted the following rule for determining with MCS-90 endorsement coverage extends in a particular case:

> [W]hen an injured party obtains a negligent judgment against a motor carrier, an insurer's obligation under the MCS-90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent. Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply.

*Yeates*, 584 F.3d at 879. In line with this reasoning, Fairmont asserts that because the federally-mandated minimums were satisfied by National's payment to the Hartys on behalf of Hummer, its endorsement liability on behalf of Ontario does not apply.

In response, the Hartys assert that *Yeates* is not controlling because it does not address the precise situation at hand. In their view, the reasoning in *Yeates* is simple, if there are two policies

8

covering *the same carrier*, only one is on the hook for the MCS-90 endorsement if the underlying policies do not provide adequate coverage to pay the federally-mandated public liability. This case, however, is empirically different, they claim. Here, while there are still two MCS-90 endorsement policies, they were issued to *two different carriers* both of whom have judgments against them for damages arising from the accident. Under this scenario, the Hartys argue that *each* carrier deemed liable must meet its federally-mandated liability. Essentially, they argue that if there are two carriers and two endorsements, each carrier is liable under its own endorsement.

The Hartys' theory was recently embraced in *Herrod v. Wilshire Insurance Co.,* 737 F.Supp.2d 1312, 1320 (D.Utah 2010). In that case, Herrod was driving his car on Interstate 15 when a wheel came off the trailer of a double-wheeled semi-trailer truck driving at freeway speed in the opposite direction. The wheel flew across the median and struck the Herrods' car, killing Kimball Herrod. At the time of the accident, DATS owned and insured the tractor involved in the accident. Espenschied owned the trailer and had leased it to DATS. Herrod's family brought a wrongful death suit against DATS, Espenschied, and others, alleging negligence by the defendants. Espenschied contacted its insurer, Wilshire, and attempted to refer the defense of the personal injury suit to Wilshire. Wilshire determined that the trailer was not listed on the schedule of covered vehicles for Espenschied's liability policy and declined coverage for the accident. Espenschied did, however, have MCS-90 coverage under its policy with Wilshire. Despite that coverage, Wilshire declined to participate in defending the suit or in settlement discussions. Eventually, Epenschied agreed to an entry of judgment for $1.1 million and the Herrods settled their claims with DATS and its insurers. Thereafter, the Herrods sought payment from Wilshire for Epenschied's liability under the MCS-90 endorsement. Wilshire refused payment because the

9

Herrod plaintiffs had already collected the federally mandated minimum, $750,000, in their settlement with DATS.

In analyzing the issue, the District Court, in a thoughtful and well-reasoned opinion, labeled the dispute "an issue of first impression" and framed the issue in this way:

> [I]s an insurer required to pay out an MCS-90 endorsement to a third-party injured by the negligence of one of its clients when there is more than one motor carrier assigned liability and at least one MCS-90 endorsement or other avenue of satisfying the financial responsibility obligation has already been paid out?

*Id.* at 1316. Wilshire, as Fairmont has here, argued that the holding in *Yeates* controlled and no liability arises for the second carrier once the financial responsibility obligation has been paid for by another carrier. The District Court disagreed stating "...*Yeates* in no way addressed whether financial responsibility minimums required by the Motor Carrier Act are assigned per incident or per carrier." *Id.* at 1317. The court then went on to thoroughly analyze the Motor Carrier Act provisions noting that the Act routinely references "motor carrier" in the singular and requires "'**each** motor carrier'...to have a bond, insurance policy, or other security, such as an MCS-90 endorsement, sufficient to pay the minimum financial responsibility and 'for each final judgment against' the motor carrier for bodily injury or death resulting from the negligent operation ...of motor vehicles." *Id.* Based upon the statutory language, the court concluded:

> Neither the statute and regulations nor the case law interpreting them ever say, or suggest, that once the injured person received the statutory minimum from one tortfeasor, the MCS–90 protection for all other negligent parties vanishes. Instead, the regulations repeatedly refer to the financial responsibility requirement of "the motor carrier," and other singular references to one motor carrier. This usage implicates that motor carriers are held to the financial responsibility individually and each motor carrier is responsible for each judgment against it. *See, e.g.,* 49 C.F.R. § 387.7(a). This interpretation is also supported by Congress's purpose in requiring a financial responsibility obligation—to combat the 'use ... of leased or

>       borrowed vehicles to avoid financial responsibility....,' *Canal Ins. Co.,* 320 F.3d at 489, and to "assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers.

*Herrod*, 737 F.Supp.2d at 1317 -1318.  Thus, the court concluded based upon its statutory interpretation and the purpose of the regulations that "each motor carrier is required to satisfy the financial responsibility requirements, including paying out on an MCS-90 endorsement where applicable."  *Id.* at 1318.

A similar decision was reached by the Seventh Circuit in *Carolina Casualty Insurance Co. v. E.C. Trucking*, 396 F.3d 837 (7th Cir. 2005).  In that case, the plaintiff decedent was killed in a vehicular accident with a tractor-trailer.  The decedent's estate then filed suit against the motor carriers that had responsibility for the tractor-trailer.  The estate received 2.5 million through a loan receipt agreement with one of the carriers and obtained a judgment against another for $1 million from another carrier.   The estate then sought and was awarded recovery under the MCS-90 endorsement issued by Carolina Casualty on behalf of the carrier for which it had obtained a judgment.  Carolina Casualty  appealed asserting that because the estate had already been compensated in excess of $750,000 through the loan receipt, its MCS-90 endorsement was not triggered.  The Seventh Circuit rejected the insurer's argument:

>       [W]e decline to find that the loan receipt agreement relieved the insurer, Carolina Casualty, of its obligation under the MCS-90 endorsement to pay Fort, a member of the public, for the final judgment rendered against its insured.

*Id.* at 842.  Thus, the court concluded that Carolina Casualty's obligation under the MCS-90 endorsement was independent of other amounts received by the plaintiffs for the same accident.

Confronted with the *Herrod* and *E.C. Trucking* decisions, Fairmont simply dismisses *Herrod*

11

as an "outlier opinion" and attempts to refocus the Court on the decision in *Yeates* and the Seventh Circuit's holding in *Travelers* that an MCS-90 endorsement is not primary coverage. Simply put, the court is unpersuaded that *Yeates* has any application to the facts in this case and nothing in *Travelers* is inconsistent with the holding in *Herrod*. As the *Herrod* court observed, "*Yeates* addressed the required payment of MCS-90 policies when **one** motor carrier had multiple insurance policies." *Herrod*, at 1317. (emphasis added). And this case, as was the case in *Herrod,* clearly involves **two** motor carriers, each with their own individual requirements to obtain MCS-90 endorsements. Neither Fairmont nor the case law that it provides has persuaded this court that the reasoning in *Herrod* is not on sound legal footing and supported by well-established legal doctrine. As *Herrod* discusses, the outcome that each carrier is liable for its own negligence is consistent with the basic principle of tort law that "a party injured by the negligence of many compared to the negligence of one has the right to recover from each negligent party" lest the prospect that multiple defendants would "wait the others out in a 'game' of 'chicken' ... and avoid being 'tagged first by the injured party ... [to] shoulder [] the entire financial liability." *Herrod*, 737 F.Supp.2d at 1318 (quoting *Redland Ins. Co. v. Shelter Mut. Ins. Co.* , 193 F.3d 1021, 1022-23 (8th Cir. 1999). Accordingly, the court concludes that where two carriers each have an MCS-90 endorsement and each has a judgment against it, each carrier is required to pay out under its MCS-90 endorsement.

Furthermore, nothing in this court's conclusion runs afoul of the Seventh Circuit's position in *Traveler's Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133 (7th Cir. 1986) cited by Fairmont. In *Traveler's,* the Seventh Circuit established the general rule that insurers providing MCS-90 endorsements are not primary insurers and thus, are only liable as a surety when the underlying policy does not afford coverage sufficient to meet the financially-mandated coverage. In this case,

it is clear that Fairmont is not being held accountable as a primary insurer. Recall that Markel Insurance, issued the underlying policy of insurance to Ontario. Markel Insurance has refused coverage because the Freightliner was not a listed vehicle in its policy and thus, the underlying policy does not afford coverage sufficient to meet the financially-mandated coverage. This, in turn, triggers the MCS-90 endorsement issued by Fairmont to meet the financially-mandated coverage on Ontario's behalf. By its own terms, the endorsement applies "regardless of whether or not each motor vehicle is specifically described in the policy." (Fairmont MCS-90); see also, *John Deere Ins. Co. v. Nueva,* 229 F.3d 853, 859 (9th Cir. 2000) *(*"whatever limitation a policy expresses regarding coverage extending only to 'covered' or 'specified' autos, this limitation ceases to operate when an injured member of the public seeks indemnification on behalf of the insured."). Thus, the surety aspect of Fairmont's endorsement applies to hold it accountable to meet the financially-mandated coverage on Ontario's behalf.

In sum, the court finds that the holdings in *Herrod* and *E.C. Trucking* conclusively establish that in this case Fairmont's MCS-90 endorsement has been triggered despite the existence and payment from National under its MCS-90 endorsement. Fairmont's Motion for Summary Judgment on this issue is DENIED. The Hartys' Motion for Summary Judgment is GRANTED.

## II.     Remaining Arguments

Fairmont makes two alternative arguments to avoid liability under the MCS-90 endorsement, neither of which advance their cause. Fairmont's first argument is that the MCS-90 endorsement has not been triggered because the endorsement requires a final judgment that the carrier was "negligent." Since here, the underlying state court judgment resulted from a default sanction rather than a determination on the merits, Fairmont asserts that Ontario was not found liable

13

for "negligence."

This argument is flawed for two reasons. First, the Motor Carrier Act requires only a final judgment, not a judgment on the merits. *See* 49 U.S.C. § 13906. Second, under Indiana law, the effect of the default is an admission by Ontario of the allegations in the complaint. *Prime Mortg. USA, Inc. v. Nichols,* 885 N.E.2d 628, 660 *(*Ind.Ct.App. 2008). Thus, when judgment was entered against Ontario and Hummer as a result of a sanction for noncompliance with discovery, the judgment was based on the allegations of negligence in the underlying complaint. This judgment has been affirmed on appeal in the state courts and constitutes a final judgment. Thus, a default judgment is a final judgment that triggers an insurer's liability under an MCS-90. Moreover, as the *Herrod* court explained if an insurer could escape liability in this way, the rule would allow parties who refuse to participate to later come in and collaterally attack a final decision. *Herrod,* 737 F.Supp.2d at 1320 (citing *Hawthorne v. Lincoln Gen. Ins. Co.,* 08–12325, 2009 WL 304742, at *6, 2009 U.S. Dist. Lexis 9329, *16–17 (E.D.Mich. Feb. 9, 2009). In *Hawthorne*, the district court held that a default judgment against an insured in favor of an injured motorist was a final judgment which triggered the MCS-90 endorsement carrier's obligation to pay the public liability under that endorsement. In line with these holdings as well as Indiana law, it is clear that the default judgment is a final judgment under Indiana law, sufficient to trigger coverage under the MCS-90 endorsement. Accordingly, Fairmont's argument is not well-taken.

Next, Fairmont asserts that the Hartys should not be allowed to "stack" MCS-90 endorsement policies that cover the same vehicle in the same accident. This argument is not well-developed in the briefs and, in any event, appears irrelevant to the present situation since this is not a situation where double recovery is at issue.

"Stacking" of insurance policies occurs when more than one policy is applicable to a loss thus allowing the insured to recover under all policies applicable to the loss (i.e., stack the policies) up to the total damages. *See generally High v. United Farm Bureau Mut. Ins. Co.,* 533 N.E.2d 1275, 1277 (Ind.Ct.App.1989). Because the purpose of insurance is to indemnify, double recovery by an insured is prohibited even when multiple policies apply to a loss. *Id.; see also Wagner v. Yates,* 912 N.E.2d 805, 812 (Ind. 2009)    Typically, anti-stacking provisions appear in uninsured and underinsured motorist policy provision and have been codified in Indiana Code Section 27–7–5–5(a) which provides in pertinent part:

> 1. The policy or endorsement affording coverage specified in this chapter may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss....

In this case, Fairmont points to an anti-stacking provision in the Markel Policy which provides:

> You or other insured persons may have a right to claim benefits from more than one automobile insurance policy covering accidents involving uninsured or unidentified automobiles.  In that case, anyone making a claim under this or any other coverage may only recover once for the same loss.

Simply put, the court fails to see how this provision has any application to the MCS-90 endorsement coverage at issue here whatsoever.  Markel has refused to provide any coverage for the accident, thus its anti-stacking provision has no application here.  And, in any event, this case has nothing to do with uninsured motorist coverage. Furthermore, it is Markel's refusal to provide coverage that has triggered Fairmont's MCS-90 endorsement liability on behalf of Ontario.  To date, the Hartys have not recovered any of their judgment against Ontario, only a portion of the judgment against Hummer from National's satisfaction of its MCS-90 endorsement coverage.  There has been no

attempt to stack multiple policies covering the same insured or to stack multiple policies covering the same vehicle. Thus, there is simply no relevance for the argument that anti-stacking provisions in this case relieve Fairmont of its MCS-90 endorsement liability.

### III.     Prejudgment Interest

Finally, the Hartys assert they are entitled to prejudgment interest in the amount of 8% which stems from Ind.Code §24-4.6-1-102. They further assert they are entitled to the policy limits under Fairmont's MCS-90 endorsement of $1 million and prejudgment interest of 8% from the date of the state court judgment against Ontario, November 18. 2009, to the date of this court's judgment against Fairmont. In response, Fairmont argues that the Hartys are entitled to something less than the policy limits under the MCS-90 endorsement and thus, there can be no determination of prejudgment interest at this point in the litigation.

The parties have spent little time addressing this issue given the main issue of Fairmont's liability under the MCS-90 endorsement. Whether the Hartys are entitled to the full amount of the policy limits has not been briefed. Rather, Fairmont implies something less than the policy limits are owing but has not provided any position as to how much less that might be. Nor have the Hartys indicated why they believe they are entitled to the full policy limits. Accordingly, the court shall take the issue under advisement. Fairmont shall have thirty (30) days to file a brief as its position on the policy amount owed. The Hartys shall have thirty (30) days to respond and Fairmont may reply within fifteen (15) days. Moreover, given the relatively small dispute remaining in this litigation, the parties are strongly encouraged to engage in settlement negotiations prior to filing briefs with the court. Accordingly, the court shall TAKE UNDER ADVISEMENT, the Hartys' Motion for Summary Judgment as to its position that it is entitled to prejudgment interest on the full

amount of the policy limits pending further filings from the parties.

## CONCLUSION

Based on the foregoing Fairmont's Motion for Summary Judgment [DE 42] is DENIED; the Hartys' Motion for Summary Judgment [DE 44] is GRANTED in part. The issue as to prejudgment interest SHALL REMAIN UNDER ADVISEMENT pending the submission of briefing. The Motion for Default Judgment against Ontario [DE 19] is DENIED as MOOT given the outcome of the current motions.

SO ORDERED.

This 19th day of August, 2011

s/ William C. Lee<br>
United States District Court