UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FAIRMONT SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 2:10 CV 070 ) |
| 1039012 ONTARIO, INC, d/b/a HUMMER TRANSPORTATION, LTD., KIMBERLY SPOA-HARTY, AND JESSE HARTY, | ) ) ) ) |
| Defendants. | ) ) |
| KIMBERLY SPOA-HARTY AND JESSE HARTY, | ) ) ) |
| Counter-claimants | ) ) |
| v. | ) ) |
| FAIRMONT SPECIALTY INSURANCE COMPANY | ) ) ) |
| Counter-Defendant | ) ) |

**OPINION AND ORDER**

After being injured in an accident with a tractor-trailer, Defendants Kimberly Spoa-Hoarty and Jesse Harty ("the Hartys") filed suit in state court against 1039012 Ontario Inc, d/b/a Hummer Transportation, Ltd ("Ontario"), the lessee of the tractor-trailer involved in the accident and Hummer Transportation, Inc. ("Hummer"), the lessor of the tractor-trailer. A state court jury awarded the Hartys in excess of five million dollars. Thereafter, the Hartys sought payment of

1

Ontario's liability from Fairmont Specialty Insurance Co. ("Fairmont"), based upon an MCS-90 endorsement policy[1] it issued to Ontario. Fairmont, in turn, filed the present declaratory judgment action wherein it named Ontario, and the Hartys as defendants and asserted that the MCS 90 endorsement did not apply and it had no duty to pay under the endorsement policy. On August 19, 2011, the undersigned granted, in part, the Hartys' Motion for Summary Judgment and concluded that the MCS-90 endorsement policy was applicable to this case. [DE 53]. The Court took under advisement the Hartys' request for prejudgment interest on the full amount of the endorsement policy. The parties were then ordered to file supplemental briefing on the issue of prejudgment interest as well as the amount the Hartys' were entitled to under the endorsement policy. After those briefs were filed and it was disclosed that the parties did not undertake settlement discussions despite strong encouragement to do so in the Court's order, the undersigned ordered the parties to participate in settlement discussions with the Magistrate Judge. [DE 57]. The parties did so to no avail. Accordingly, the court now has before it the remainder of the Hartys' Motion for Summary Judgment seeking prejudgment interest as well as their request for the full amount of the MCS 90 endorsement policy limits. For the following reasons, the court concludes that the Hartys' motion [DE 44] will be granted in part and denied in part.

## DISCUSSION

The underlying facts of this case have been fully set out in the prior summary judgment ruling, (see DE 53) and need not be recounted in detail here. It suffices to say that the state court entered final judgment against Ontario and Hummer and in favor of the Hartys. The jury awarded

---

[1] An MCS-90 endorsement must be attached to the vehicle liability policy of certain regulated motor carriers to ensure that federally mandated insurance coverage under the Motor Carrier Act, 49 U.S.C. §10927, et seq., is in place.

damages to Kimberly Spoa-Harty in the amount of $4,270,000 and an additional $950,000 to her husband, Jesse. Hummer's insurance carrier paid the Hartys $750,000 which constituted the policy limits under its MCS-90 endorsement insuring agreement along with interest on the judgment. The remainder of the judgment has not been satisfied.

At the time of the accident, Ontario was insured by Markel Insurance Company of Canada.[2] Fairmont, by collateral agreement, endorsed the Markel Policy by issuing an MCS-90 endorsement with limits of $1,000,000. This court has concluded that Fairmont is liable to the Hartys under this MCS-90 endorsement. The remainder of this dispute involves the amount of endorsement owed to the Hartys and the amount of prejudgment interest to assess, if any.

**Amount of Endorsement**

The Hartys contend that the unambiguous language in the endorsement itself clearly entitles them to recovery of the full policy limits. They point out that the MCS-90 endorsement contains the following limits of liability:

> This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident.

The agreement further provides:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the Company) [Fairmont] agrees to pay, **within the limits of liability described herein**, any final judgment recovered against the insured [Ontario] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not

---

[2]The Markel policy did not have the tractor-trailer listed as a covered vehicle. Markel has denied coverage for the accident because the tractor-trailer is not listed in the policy and the policy excludes coverage for leased vehicles. Because an MCS-90 endorsement operates as a surety rather than primary insurance coverage, the denial of coverage by the primary insurer is a precondition to the MCS-90 coverage becoming operable. As a result of Markel's denial of coverage, the Hartys' sought payment under Fairmont's endorsement policy.

3

> each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere...It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, **within the limits of liability herein described,** irrespective of the financial condition, insolvency or bankruptcy of the insured.

(Fairmont MCS-90, Hartys' Exhibit 1).

In contrast, Fairmont asserts that it is only required to pay $750,000 not the full $1,000,000 because the endorsement contains different limits applicable to the various types of carriage and the commodity being transported. (Fairmont brief, p. 3). To support its view, Fairmont looks to the regulations which are incorporated as part of the last page of the endorsement. These regulations contain different minimum insurance requirements vis-a-vis the type of carriage involved (i.e., for hire in interstate and foreign commerce vs. for hire and private in interstate or foreign commerce) as well as the type of material transported (i.e., hazardous vs. non-hazardous). Motor carriers must maintain at least $750,000 in financial responsibility coverage for vehicles transporting non-hazardous cargo but $1,000,000 for vehicles transporting oil and certain other hazardous substances. According to Fairmont, because the minimum insuring requirement for the type of vehicle and materials transported by the tractor-trailer involved in the accident is $750,000, that is all the policy requires it to pay. Thus, the issue before the court is whether the MCS-90 endorsement is limited to the minimum financial requirements of 49 C.F.R. §387.9 or to the limits of the policy to which it is attached.

In this case, the face amount of the policy shows limits of $1,000,000 and the endorsement policy expressly obligates Fairmont to pay any judgment within those limits. Fairmont, however, argues that a motor carrier may obtain one policy with an attached endorsement meeting the

4

highest requisite minimum for the type of cargo it transports and that this is precisely what Ontario did in this instance.[3] Unfortunately for Fairmont, even if this is an accurate characterization of what Ontario intended to do, it is not reflected anywhere in the endorsement agreement itself. Rather, the endorsement simply reflects $1,000,000 policy limit per occurrence.

Moreover, when faced with other situations involving the applicability of the policy limits as opposed to minimum financial limits, courts have held that the insurer must pay the face amount of the policy, subject to its right of reimbursement from the insured.[4] *See Carolina Cas. Ins. Co. v. Zinsmaster,* 2007 WL 670937 at *4-5 (N.D.Ind. Feb. 27, 2007) (MCS-90 endorsement's security cannot be below minimum financial requirements, but level of payment is amount of coverage under the policy); *Stevens v. Fireman's Fund Ins. Co.*, 2002 WL 31951274, at *6-8 (S.D.Ohio Nov. 6, 2002) (potential liability under MCS-90 constrained by stated policy limit), *aff'd,* 375 F.3d 464 (6th Cir. 2004); *Hamm v. Canal Ins. Co.*, 10 F.Supp.2d 539, 545-48 (M.D.N.C. 1998) (policy's per accident limit establishes maximum liability under MCS-90), *aff'd,* 178 F.3d 1283 (4th Cir. 1999). In concluding as they do, these courts focus on the purpose behind MCS-90 endorsements:

> MCS-90 endorsement ensures that a motor carrier has independent financial

---

[3] Fairmont cites no regulatory authority for the assertion that motor carriers may purchase a single endorsement intended to cover the highest requisite minimum for the type of cargo it transports.

[4] The regulations provide for an insurer's right of reimbursement. *See 49 C.F.R. §387.15.* The endorsement states, in pertinent part, "The insured agrees to reimburse the company ... for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." 49 C.F.R. § 387.15 (Illustration I); *see also Canal Ins. Co. v. Distribution Servs.,Inc.*, 176 F.Supp.2d 559, 565 (E.D.Va. 2001) "[The insured's] reimbursement obligation is ...consistent with ... the language ... of the MCS-90 Endorsement."). The endorsement also states, "[A]ll terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the[insurer]." 49 C.F.R. § 387.15 (Illustration I).

> responsibility to pay for losses sustained by the general public arising out of its operations. The endorsement is designed to protect the public, not the policyholder; the obligation the endorsement creates runs to the public, not to the insured. It seeks to ensure that ultimate responsibility lies with the insured trucking company.

*Real Legacy Assur. Co. v. Santori Trucking, Inc.*, 560 F.Supp.2d 143, 146 -147 (D.Puerto Rico, 2008). By obligating insurers to pay up to the full amount of the policy limits to satisfy a judgment against an insured, subject to their right of reimbursement from the insured, the courts have held that the purpose of the endorsement is advanced. This court agrees.

In this case, the policy's per accident limit is $1,000,000. The amount of the judgment exceeds $1,000,000 and thus, under the policy Fairmont the court concludes that it is obligated to pay the full amount of the policy to satisfy the judgment obtained by the Hartys against Ontario.

**Prejudgment Interest**

The final issue remaining is a determination of prejudgment interest. The MCS-90 endorsement expressly provides that any surety benefit is not owed until a final judgment is recovered against **the insured**. In this case, a final judgment against Hummer and Ontario, **the insured**, in the state court case was entered on November 18, 2009. Because Fairmont's surety obligation runs from the date of a final judgment against Ontario and not against itself, interest began accruing against Fairmont on November 18, 2009.

The parties, however, refer to the interest accruing from the date of the state court judgment to the present as "prejudgment interest" presumably because no final judgment has been entered against Fairmont in this declaratory judgment case. In theory, since a final judgment has not been issued in this case, the interest sought is "prejudgment" in this case. However, what the Hartys appear to be seeking is both post-judgment interest on the state court judgment and

6

prejudgment interest in this court for the same time frame. While the Hartys are certainly entitled to interest from Fairmont to compensate them for the delay in payment occasioned by Fairmont's filing of this declaratory judgment action, the court is reluctant to order it in this declaratory judgment case. The entitlement to post-judgment interest in the state court case is a matter for the state court to resolve. Accordingly, to the extent, the Hartys seek an additional assessment of pre-judgment interest from this court, the court concludes that it appears duplicative of the post-judgment interest that is to be assessed by the state court and is DENIED.

## **CONCLUSION**

Based on the foregoing, the portions of the Hartys' Motion for Summary Judgment [DE 44] that were previously taken under advisement are GRANTED in part and DENIED in part. The court GRANTS the motion as to Fairmont's liability under the MCS-90 endorsement and concludes the amount of the surety owed to the Hartys is $1,000,000 (One Million Dollars). The court DENIES the motion as to the assessment of prejudgment interest. The Clerk is directed to enter a final judgment in favor of the Hartys' in the amount of $1,000,000 (One Million Dollars).

Entered: This 19th day of June, 2012

s/ William C. Lee<br>
United States District Court